**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| PATRICK SAUNDERS | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | FILE NO. 1:12-cv-01750-BMC |
| | ) | |
| vs. | ) | |
| | ) | PLAINTIFF'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION FOR |
| NCO FINANCIAL SYSTEMS, INC. | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Patrick Saunders ("Plaintiff"), by and through his undersigned counsel,

Weisberg & Meyers, LLC, hereby submits his response to Defendant, NCO Financial Systems,

Inc.'s ("Defendant"), motion for summary judgment.

## TABLE OF CONTENTS

I.      INTRODUCTION.                                                                    1

II.     STANDARD.                                                                        2

III.    THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.                                   2

IV.     THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF
        CONSUMER-DEBTORS.                                                                3

V.      THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST
        SOPHISTICATED CONSUMER STANDARD.                                                 3

VI.     PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND
        THE ALLEGED OBLIGATION IS A DEBT, AS DEFINED BY THE FDCPA.                        4

VII.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692g.                                 4

        A.      The FDCPA Requires A Debt Collector To Send An Initial Validation Notice
                To A Valid Address.                                                      5

        B.      Defendant Has Not Shown It Sent Plaintiff A Letter Containing The
                Disclosures Required By 15 U.S.C. § 1692g(a).                            7

        C.      Defendant Did Not Properly Send Its Letter To Plaintiff At A Valid Address.7

VIII.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692c(a)(1).                           8

IX.     DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692e(10).                            11

X.      DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER 47
        U.S.C. § 227(b)(1)(A)(iii).                                                     12

        A.      The Facts Show That Defendant Made Calls To Plaintiff's Cellular
                Telephone  Number Using An Automatic Telephone Dialing System Or An
                Artificial Or Prerecorded Voice.                                        13

                1.      Defendant Placed Calls To Plaintiff's Cellular Telephone Using An
                        Automatic Telephone Dialing System.                             13

                2.      Defendant Placed Calls To Plaintiff's Cellular Telephone Number
                        Using An Artificial Or Prerecorded Voice.                       15

**B.**     **If A Call Is Placed To A Party's Cellular Telephone, The TCPA Applies, Regardless Of Whether The Party Is Charged For The Particular Call.     15**

**C.**     **Plaintiff Revoked Any Prior Express Consent To Place Telephone Calls To His Cellular Telephone Number Using An Automatic Telephone Dialing System Or An Artificial Or Prerecorded Voice.     16**

  **1.**     **Plaintiff Revoked Any Prior Express Consent In Writing On No Less Than Two Separate Occasions.     16**

  **2.**     **Oral Revocation Of Prior Express Consent Is Sufficient.     17**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adamcik v. Credit Control Services, Inc.*, 832 F.Supp.2d 744 (W.D. Tex. 2011)      17-18

*Adickes v. S.H. Kress and Co.*, 398 U.S. 144 (1970)      2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)      2

*Austin v. Great Lakes Collection Bureau, Inc.*, 834 F. Supp. 557 (D. Conn. 1993)      10

*Brezinski v. Vital Recovery Servs., Inc.*, 2006 WL 1982501 (E.D. Wis. July 12 200)      8

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991)      2

*Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96 (D. Conn. 2005)      10

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006)      3

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)      3, 11-12

*Covey v. Simonton*, 481 F. Supp. 2d 224 (E.D.N.Y. 2007)      2

*DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001)      4

*Douyon v. N.Y. Medical Health Care, P.C.*, 2012 WL 4486100 (E.D.N.Y. Sept. 28, 2012)      2

*Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006)      3

*Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994)      12

*Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992)      5

*Hicks v. Client Services, Inc.*, 2009 WL 2365637 (S.D. Fla. June 9, 2009)      14

*Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769 (7th Cir. 2003).      9

*Johnson v. Midland Credit Mgmt. Inc.*, 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006)

*Johnson v. Prof'l Collection Consultants*, 2010 WL 2196571 (S.D. Cal. May 28, 2010)      5-6

*Johnson v. Riddle*, 305 F.3d 1107  (10th Cir. 2002)      3

*Lee v. Credit Mgmt., LP*, 846 F.Supp.2d 716  (S.D. Tex. 2012)      7

*Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197  (9th Cir. 1999)      5-6

*Mitchem v. Illinois Collection Serv., Inc.*, 2010 WL 3003990  (N.D. Ill. July 29, 2010)        16

*Moltz v. Firstsource Advantage, Inc.*, 2011 WL 3360010  (W.D.N.Y. Aug. 3, 2011)        8

*Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703  (W.D.N.Y. Sept. 15, 2011)        8

*Myers v. County of Nassau*, 825 F. Supp. 2d 359  (E.D.N.Y. 2011)        2

*Oscar v. Professional Claims Bureau, Inc.*, 2012 WL 23967128  (E.D.N.Y. June 1, 2012)        3

*Palisades Collection, L.L.C. v. O'Brien*, 873 N.E.2d 923  (Ohio App. 2007)        6

*Plummer v. Gordon*, 193 F. Supp. 2d 460  (D. Conn. 2002)        3

*Ponce v. BCA Fin. Services, Inc.*, 2012 WL 470213  (11th Cir. Feb. 14, 2012)        5

*Ramsey v. Coughlin*, 94 F.3d 71  (2d Cir. 1996)        8, 11-12, 17, 19

*Robinson v. Midland Funding, LLC*, 2011 WL 1434919  (S.D. Cal. Apr. 13, 2011)        14

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996)        2-3

*Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946 (9th Cir. 2009).        13

*Shand-Pistilli v. Professional Account Services, Inc.*, 2010 WL 2978029 (E.D. Pa. July 26, 2010) 8

*Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010)        18

*Tovar v. Midland Credit Mgmt.*, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) 14

*Vance v. Bureau of Collection Recovery LLC*, 2011 WL 881550 (N.D. Ill. Mar. 11, 2011)        14

**Rules**

Fed. R. Civ. P. 56(f)(1), (3).        8, 11-12, 17, 19

**Statutes**

15 U.S.C. § 1692a(3)        4

15 U.S.C. § 1692a(5)        4

15 U.S.C. § 1692a(6)        4

15 U.S.C. § 1692c        9

15 U.S.C. § 1692c(a)(1)                                                                                      8

15 U.S.C. § 1692e.                                                                                          11

15 U.S.C. § 1692e(10)                                                                                       12

15 U.S.C. § 1692g(a)                                                                                        4-8

47 U.S.C. § 227(a)(1)                                                                                       13

47 U.S.C. § 227(b)(1)(A)(iii)                                                                             13, 15

**Other Sources**

FCC, In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection
         Act Of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-
         232 (2007).                                                                                        14

FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
         Act of 1991, 03-153                                                                                14

FTC Official Staff Commentary at § 807                                                                      11

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559 (F.C.C.2007)  16

S. Rep. No. 382, 95th Cong.                                                                                 12

## I.       INTRODUCTION.

Plaintiff alleges claims against Defendant pursuant to the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA").  Defendant now moves for summary judgment on each of Plaintiff's claims.

Defendant is not entitled to summary judgment on Plaintiff's § 1692g(a) claim.  While Defendant asserts that it mailed the notices to an address in Maryland, Plaintiff has not lived at such address since 1998.  Nevertheless, when Defendant learned that Plaintiff had not received the letter containing the required notices, Defendant failed to mail them to Plaintiff's correct address.

Defendant is also not entitled to summary judgment on Plaintiff's § 1692c(a)(1) claim.  Plaintiff advised Defendant on no less than three separate occasions—twice in writing and once orally—that all telephone calls were inconvenient.  Nevertheless, Defendant continued to place telephone calls to Plaintiff.

Similarly, Defendant is not entitled to summary judgment on Plaintiff's § 1692e(10) claim.  Defendant's actions in failing to provide Plaintiff with the validation notices after receiving knowledge that Plaintiff did not reside at the address where the notices were mailed and had not received the notices, as well as Defendant's actions in continuing to call Plaintiff despite receiving Plaintiff's written and oral demands to cease all telephone calls, constitute deceptive means in violation of § 1692e(10).

Finally, Defendant is not entitled to summary judgment on Plaintiff's TCPA claims.  Defendant does not dispute that it placed telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice.  Instead, it asserts that the calls were placed with Plaintiff's prior express consent.  However, Plaintiff revoked any

1

such prior express consent on no less than three separate occasions—twice in writing and once orally.  Accordingly, Defendant's motion for summary judgment should be denied.

## II.    STANDARD.

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Myers v. County of Nassau*, 825 F. Supp. 2d 359, 365 (E.D.N.Y. 2011) (citing Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010)).  "[T]he Court should not grant summary judgment unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief."  *Covey v. Simonton*, 481 F. Supp. 2d 224, 228 (E.D.N.Y. 2007) (quotations and citation omitted).  A fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing whether summary judgment is appropriate, the court's obligation is to view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59 (1970). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA imposes strict liability.  *Douyon v. N.Y. Medical Health Care, P.C.*, No. CV10-3983, 2012 WL 4486100, at *15 (E.D.N.Y. Sept. 28, 2012) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)).  "Because the [FDCPA] imposes strict liability, a

2

consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell*, 74 F.3d at 33.

## IV.   THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  *See, e.g.*, *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 655 (S.D.N.Y. 2006).  The remedial nature of the FDCPA mandates a liberal interpretation of its provisions. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006). Because the FDCPA is a remedial statute, it should be construed liberally in favor of consumers. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *see, e.g.*, *Plummer v. Gordon*, 193 F. Supp. 2d 460, 463 (D. Conn. 2002).

## V.   THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.

"The Second Circuit determines violations of the FDCPA 'objectively from the viewpoint of the least sophisticated consumer.'"  *Oscar v. Professional Claims Bureau, Inc.*, No. CV11-5319, 2012 WL 23967128, at *3 (E.D.N.Y. June 1, 2012) (citations omitted).  "This standard was enacted to protect 'the gullible as well as the shrewd.'" *Id.* (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)).  "To serve the purposes of the consumer-protection laws, courts have attempted to articulate a standard for evaluating deceptiveness that does not rely on assumptions about the 'average' or 'normal' consumer.  This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes."  *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)

## VI.   PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND THE ALLEGED OBLIGATION IS A DEBT, AS DEFINED BY THE FDCPA.

The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  Here, Plaintiff is a natural person allegedly obligated to pay a debt for a personal PACER account.  (Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Material Facts ("SOF") ¶21).  Thus, Plaintiff is a consumer as defined by the FDCPA.

The FDCPA defines a debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."  15 U.S.C. § 1692a(5).  Here, the alleged obligation arose from a PACER account, which Plaintiff used for personal research purposes.  (SOF ¶ 21).  Thus, the alleged obligation is a debt as defined by the FDCPA.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  On behalf of PACER, Defendant attempted to collect the alleged obligation from Plaintiff via U.S. Mail and telephone.  (SOF ¶¶36-37; Doc. 26-1 ¶6).  Thus, Defendant is a debt collector as defined by the FDCPA.

## VII.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692g.

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights."  *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).  The FDCPA at section 1692g(a) provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

[enumerated notices].

15 U.S.C. § 1692g(a).

### A.     The FDCPA Requires A Debt Collector To Send An Initial Validation Notice To A Valid Address.

The purpose of providing a validation notice is to ensure the consumer is aware of his legal rights, including that he is entitled to verification of a debt's validity. *Frey v. Gangwish*, 970 F.2d 1516, 1519 (6th Cir. 1992). For this reason, the protections afforded consumers by the FDCPA go beyond merely requiring that a 1692g notice be sent; rather it must be "*properly sent.*" *Johnson v. Prof'l Collection Consultants*, 2010 WL 2196571, at *8 (S.D. Cal. May 28, 2010) (rejecting the defendant's claims that "it has no liability as long as it sends a letter *somewhere; anywhere.*") (emphasis in original). "While the plain language of the statute might not require the debt collector to ensure actual receipt of the written notice, the plain language does require the debt collector to send the written notice to a valid and proper address where the consumer may actually receive it." *Ponce v. BCA Fin. Services, Inc.*, No. 11-13688, 2012 WL 470213, at *1 (11th Cir. Feb. 14, 2012) (affirming district court's finding that a letter sent to the debtor was not an initial communication and did not satisfy section 1692g "because it was sent to an address at which [the debtor] had not lived for over eight months.").

Defendant's cited Ninth Circuit case, *Mahon*, is distinguishable from the instant matter. In *Mahon*, the debt collector sent an initial validation notice to the plaintiffs' *correct* address, where they had lived for 45 years. *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1199 (9th Cir. 1999). While the letter was properly addressed, the plaintiffs "simply say

5

they did not receive the Notice." *Id.* at 1202.  Because they produced no other evidence to rebut

the mailbox presumption, the court found no genuine dispute that the letter was properly sent and

received.  *Id.*

As a court interpreting *Mahon* explained: "Defendant contends that . . . the only

obligation imposed upon a debt collector by 15 U.S.C. § 1692g is to **send** a 1692g validation

notice. . . .  However, as stated in *Mahon*, the mailbox rule cases require that the letter be

*properly* mailed."  *Johnson v. Professional Collection Consultants*, 2010 WL 2196571, at *8

(S.D. Cal. May 28, 2010) (emphasis in original) (citing *Mahon*, 171 F.3d at 1202).  "If debt

collectors could satisfy the FDCPA by merely sending validation notices to *any* address, valid or

invalid, it would not serve to inform debtors of their rights, and would constitute an abusive debt

collection practice."  *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2006 WL

2473004, at *12 (N.D. Ohio Aug. 24, 2006) (internal quotations omitted, emphasis in original).

In *Johnson v. Midland Credit Management, Inc.*, the court explained:

> Midland has put forth no evidence to suggest it actually sent Johnson a validation
> notice at a valid address.  **Midland's violation in this case resulted when it**
> **obtained a new address for Johnson, and instead of sending out a new**
> **validation notice, it proceeded with its debt collection activities as if its first**
> **correspondence was sent to a correct address**.  Accordingly, since Midland
> failed to send Johnson a validation notice within five days of the first
> correspondence it actually sent to a valid address, . . . Midland violated the
> FDCPA, 15 U.S.C. § 1692g(a).

*Id*. at *13 (emphasis added).

Noteworthy, even though a letter may not be returned in the mail, "that does not itself

establish that the address to which it was sent was valid."  *Palisades Collection, L.L.C. v.*

*O'Brien*, 873 N.E.2d 923, 929 (Ohio App. 2007) ("it is entirely possible that the current resident

of [the address to which defendant mailed a 1692g notice], having received what looked like

junk mail addressed to the former resident, simply pitched it in the trash, a common enough occurrence.").

**B.     Defendant Has Not Shown It Sent Plaintiff A Letter Containing The Disclosures Required By 15 U.S.C. § 1692g(a).**

The fact that Defendant purports to have sent Plaintiff a letter on October 11, 2010 is insufficient to defeat his § 1692g(a) claim.  First, Defendant has not shown that the letter was in fact sent.  As one court explained in denying a debt collector's motion for summary judgment:

> Defendant does not, however, submit the actual letters that it sent to Lee [the consumer]. Rather, Defendant attempts to rely on notations of codes contained in its documentation log, which indicate that the letter should have been sent, along with a "form" letter showing what the letters would have stated.  Unfortunately, for Defendant, this evidence falls short of establishing that the letter was, in fact, sent to Lee and, if so, that it was sent within the prescribed time.

*Lee v. Credit Mgmt., LP*, 846 F.Supp.2d 716, 726 (S.D. Tex. 2012).

In this case, Defendant presents even less evidence than that submitted in *Lee*.  Defendant has not produced the actual letter that was allegedly sent.  (See gen. Doc. 26-1; Doc. 26-2; Doc. 26-3; Doc. 26-4).  Nor has Defendant even produced a form letter or other evidence showing what the content of the letter would have been, and that it would have complied with the requirements of section 1692g.  For this reason alone, Defendant is not entitled to summary judgment on this issue.

**C.     Defendant Did Not Properly Send Its Letter To Plaintiff At A Valid Address.**

Furthermore, even if Defendant could show that it mailed a letter containing the proper statutory notices, the letter would have been sent to the wrong address.  Defendant asserts it sent the October 11, 2010 initial demand letter to an address in Maryland.  (SOF ¶28).  However, Plaintiff's uncontroverted deposition testimony demonstrates that he had not lived at that address

7

since 1998.  SOF ¶30).   Therefore, Defendant's initial letter to Plaintiff was not properly addressed and, as would be expected, Plaintiff never received it.  (SOF ¶¶29, 31).

Instead, the first written communication Plaintiff received from Defendant was the April 22, 2011 letter, which indisputably did not contain the notices required by 15 U.S.C. § 1692g(a).  (Doc. 26-4 at 7-11, 16).  Even though Defendant received notice from Plaintiff on May 23, 2011 that Plaintiff did not live at the Maryland address and had not received its initial demand letter, (SOF ¶¶28-29), Defendant did not provide Plaintiff with the disclosures required by 15 U.S.C. § 1692g(a) in any communications after that date.   (See Doc. 26-4 at 7-11).  Because Defendant failed to comply with 15 U.S.C. § 1692g(a), it is not entitled to summary judgment on this issue. In fact, the Court may grant summary judgment on this issue in favor of Plaintiff *sua sponte*. *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996); *see* Fed. R. Civ. P. 56(f)(1), (3).

## VIII.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692c(a)(1).

The FDCPA prohibits a debt collector from communicating with a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer."   15 U.S.C. § 1692c(a)(1).   Contacting a consumer at home can be an inconvenient place under the FDCPA when the debt collector knows or should have known that contacting the consumer there is inconvenient.  *See, e.g.*, *Shand-Pistilli v. Professional Account Services, Inc.*, 2010 WL 2978029, *3 (E.D. Pa. July 26, 2010); *Brezinski v. Vital Recovery Servs., Inc.*, No. 05-1020, 2006 WL 1982501, at *6 (E.D. Wis. July 12 2006).  "[E]ven if a debtor never submits a written cease and desist demand, a collector's conduct following a verbal demand still can violate the FDCPA by constituting harassment or abuse."  *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, at *14 (W.D.N.Y. Sept. 15, 2011) (citing *Moltz v.*

8

*Firstsource Advantage, Inc.*, 2011 WL 3360010, at *3 (W.D.N.Y. Aug. 3, 2011) ("[T]he lack of a written request does not preclude a finding that the calls violated the FDCPA.")).

The FDCPA exists to protect the least sophisticated consumer, who cannot be expected to assert his rights in legally precise phrases; it is enough to use plain English to put debt collectors on notice under 15 U.S.C. § 1692c. *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003). In *Horkey*, the consumer informed the debt collector that she could not talk with him at work. *Id.* The issue before the court was whether such a statement was clear enough that, as a matter of law, the collector knew or had reason to know that the consumer's employer prohibited her from receiving collection calls at work. The Seventh Circuit held that it did.

> It is true, as J.V.D.B. argues, that saying "I cannot talk with you at work" could conceivably be understood to mean something other than "my employer forbids me from talking with you at work." It could, for example, mean "I do not wish to talk with you at work" or "I am too busy to talk with you at work." **But this observation does not create an issue of material fact because, as we observed in *Gammon v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254 (7th Cir.1994), the FDCPA exists to protect the unsophisticated consumer**. *Id.* at 1257. **Unsophisticated consumers, whatever else may be said about them, cannot be expected to assert their § 1692c(a)(3) rights in legally precise phrases. It is therefore enough to put debt collectors on notice under § 1692c(a)(3) when a consumer states in plain English that she cannot speak to the debt collector at work**. That is what Horkey did. Without evidence that J.V.D.B. knew, contrary to Horkey's assertion, that her employer did not prohibit her from taking debt-related calls at work, she is entitled to summary judgment on her § 1692c(a)(3) claim.

*Horkey,* 333 F. 3d at 773 (emphasis added).

Defendant began calling Plaintiff's cellular telephone number during October 2010 in an attempt to collect an alleged debt owed to PACER. (Doc. 26-1 ¶7; Doc. 26-4 at 7-11). When PACER placed the debt with Defendant for collection, it provided Defendant with Plaintiff's name, identified as "P. Saunders," as the contact person for the debt. (SOF ¶22). Plaintiff sent Defendant written correspondence dated March 16, 2011, demanding Defendant cease and desist

placement of all telephone calls to him.  (Doc. 26-1 ¶8; Doc. 26-1 at 14).  Plaintiff's March 16, 2011 letter was signed by "Patrick Saunders."  (Doc. 26-1 at 14).  Despite having Plaintiff's name on the account when placed by PACER, Defendant continued to place telephone calls to Plaintiff, despite knowledge that such calls were inconvenient.  (SOF ¶¶36-37; Doc. 26-4 at 7-11); *see Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 100 (D. Conn. 2005) ("The defendant violated §§ 1692c(a)(1) and (3) by repeatedly calling Chiverton at work after he expressly requested the defendant not to do so . . . ."); *Austin v. Great Lakes Collection Bureau, Inc.*, 834 F. Supp. 557, 559 (D. Conn. 1993) (granting plaintiff's motion for summary judgment upon finding willful disregard of 15 U.S.C. § 1692c(a)(1) when defendant continued to call plaintiff at her known workplace after plaintiff informed defendant that the calls were inconvenient).

After waiting over one month, Defendant sent Plaintiff written correspondence dated April 22, 2011, requesting various additional information from Plaintiff.  (Doc. 26-1 ¶9; Doc. 26-4 at 16).  Per Defendant's request, Plaintiff responded on April 27, 2011, providing Defendant with the number Defendant had been calling from.  (See Doc. 16-4 at 16, 18).  Again, Defendant continued to place telephone calls to Plaintiff, despite knowledge that such calls were inconvenient.  (SOF ¶¶36-37; Doc. 26-4 at 7-11).  *Chiverton*, 399 F. Supp. 2d at 100; *Austin*, 834 F. Supp. at 559.

When it became clear that Defendant would continue to call, Plaintiff called Defendant on May 23, 2011.  (Doc. 26-1 ¶16).  At that time, Defendant located Plaintiff's account.  (Doc. 26-1 ¶17; Doc. 26-4 at 9)  During the May 23, 2012 telephone conversation, Plaintiff advised Defendant of his written cease and desist letters and told Defendant that he wanted the calls to stop.  (SOF ¶¶25-26 ("I remember saying, I want these calls to stop, there are too many, what

10

can I do to stop.")).  Nonetheless, despite its receipt of each Defendant's previous written cease and desist letters, Defendant stated that it would not stop the calls without receiving written correspondence.  (SOF ¶27).  Thereafter, Defendant placed no less than seventeen (17) additional telephone calls to Plaintiff's cellular telephone. (SOF ¶37).  Because Defendant continued to place telephone calls to Plaintiff despite knowledge that such calls were inconvenient, Defendant is not entitled to summary judgment on Plaintiff's § 1692c(a)(1) claim.  In fact, the Court may grant summary judgment on this issue in favor of Plaintiff *sua sponte*.  *Ramsey*, 94 F.3d at 74; *see* Fed. R. Civ. P. 56(f)(1), (3).

## IX.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM PURSUANT TO 15 U.S.C. § 1692e(10).

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The sixteen subsections of section 1692e provide a non-exhaustive list of practices that fall within such prohibited conduct.  Proscribed action includes the "false representation or implication that any individual is an attorney or that any communication is from an attorney."

The Federal Trade Commission's commentary on the FDCPA recognizes:

> Prohibited actions are not limited to the sixteen subsections listed as examples of activities that violate this provision. In addition, section 807(10), which prohibits the "use of any false representation or deceptive means" by a debt collector, is particularly broad and encompasses virtually every violation, including those not covered by the other subsections.

FTC Official Staff Commentary at § 807, 1, *available at* http://www.ftc.gov/os/statutes/fdcpa/commentary.htm#807.

Thus, a debt collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by section 1692e.  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  Congress, recognizing that it would be impossible to foresee every type of deceptive

collection misbehavior, expressly included in the FDCPA a general standard affording courts the ability to proscribe conduct not specifically addressed in section 1692e.  S. Rep. No. 382, 95th Cong. at 4 ("this bill prohibits in general terms any harassing unfair or deceptive collection practice.  This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.").  15 U.S.C. § 1692e(10) prohibits "any false representation or deceptive means to collect or attempt to collect any debt . . . ." A collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by the FDCPA. *Clomon*, 988 F.2d at 1318. "[I]t is not unusual for an action to violate more than one FDCPA provision." *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516, n.10 (9th Cir. 1994) (citing FTC Official Staff Commentary on the FDCPA, 53 Fed. Reg. at 50,109). To this end, courts routinely find violations of multiple subsections of the FDCPA based on the same conduct. *See, e.g., Clomon*, 988 F.2d at 1320-21; *see also Taylor*, 103 F.3d at 1238.

Here, Defendant's actions in failing to provide Plaintiff with the validation notices after receiving knowledge that Plaintiff did not reside at the address where the notices were mailed and had not received the notices also constitute the use of deceptive means in violation of § 1692e(10).  Similarly, Defendant's actions in continuing to telephone Plaintiff despite receiving Plaintiff's written and oral demands to cease all telephone calls constitute the use of deceptive means in violation of § 1692e(10).  As such, Defendant is not entitled to summary judgment on Plaintiff's § 1692e(10) claim and the Court may grant summary judgment on this issue in favor of Plaintiff *sua sponte*.  *Ramsey*, 94 F.3d at 74; *see* Fed. R. Civ. P. 56(f)(1), (3).

## X.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\*    \*    \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

**A.     The Facts Show That Defendant Made Calls To Plaintiff's Cellular Telephone  Number Using An Automatic Telephone Dialing System Or An Artificial Or Prerecorded Voice.**

In this matter, Defendant called Plaintiff's cellular telephone number using an automatic telephone dialing system and/or an artificial or prerecorded voice.  In fact, Defendant does not argue that it did not place such calls using an automatic telephone dialing system or an artificial or prerecorded voice.  (See Doc. 26-2).  Instead, Defendant argues it had Plaintiff's prior express consent to call Plaintiff's cellular telephone number, discussed *infra*.  (See Doc. 26-2 § IV.A).

**1.     Defendant Placed Calls To Plaintiff's Cellular Telephone Using An Automatic Telephone Dialing System.**

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).  "[A] system need not actually store, produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it."  *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir. 2009).

13

The FCC has issued rulings expanding the definition of "automatic telephone dialing system" to include "predictive dialers", which the FCC defined as "having the capacity to dial numbers without human intervention" and as " 'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls .... [i]n most cases, telemarketers program the numbers to be called into the equipment ...' " FCC, In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-232, ¶12, n. 23 (2007).  The FCC also stated that the "purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented" and that to exclude equipment because "it relies on a given set of numbers would lead to an unintended result." FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 03-153, ¶133.

Recent rulings of several district courts across the country have followed the FCC's rulings and held that predictive dialers are covered by the TCPA.  *See Tovar v. Midland Credit Mgmt.*, No. 10CV2600 MMA MDD, 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors."); *Robinson v. Midland Funding, LLC*, No. 10CV2261 MMA AJB, 2011 WL 1434919, at *5 (S.D. Cal. Apr. 13, 2011) (same); *Vance v. Bureau of Collection Recovery LLC*, No. 10-CV-06324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) ("the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *Hicks v. Client Services, Inc.*, No. 07-61822-CIV-DIMITRO, 2009 WL 2365637, at *5 (S.D. Fla. June 9, 2009) ("This

14

type of device, which calls a set of numbers without human intervention, falls under the FCC definition of automatic telephone dialing systems.").

Here, Defendant made no less than 31 calls to Plaintiff's cellular telephone number between March 22, 2011 and October 18, 2011 using an automatic telephone dialing system. (SOF ¶32). Defendant's automatic telephone dialing system "generates the list of the consumers to be called and the dialer works from that list." (SOF ¶33). The entries in Defendant's collection notes identified by "VIB" signal that the telephone call was placed using Defendant's automatic telephone dialing system. (SOF ¶34; see Doc. 26-4 at 7-11). As such, each of the calls were placed in violation of the TCPA.

**2.  Defendant Placed Calls To Plaintiff's Cellular Telephone Number Using An Artificial Or Prerecorded Voice.**

Defendant made no less than 31 calls to Plaintiff's cellular telephone number between March 22, 2011 and October 18, 2011 using an automatic telephone dialing system. (SOF ¶¶34-37; Doc. 26-4 at 7-11). On no less than 18 occasions, Defendant left a pre-recorded voicemail message. (SOF ¶35; see Doc. 26-4 at 7-11). Plaintiff also testified in his deposition that he received recorded messages from an automated voice. (SOF ¶35).

**B.  If A Call Is Placed To A Party's Cellular Telephone, The TCPA Applies, Regardless Of Whether The Party Is Charged For The Particular Call.**

The TCPA prohibits using an auto dialer to make a call "to any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, **or** any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Because the phrase "for which the called party is charged for the call" only modifies "any service," calls placed to a number assigned to a cellular telephone service, or the other services specifically mentioned in the statute, do not

15

require the party to be charged in order to violate the TCPA.  *See Mitchem v. Illinois Collection Serv., Inc.*, 2010 WL 3003990, at *2 (N.D. Ill. July 29, 2010) ("The TCPA does not require plaintiff to allege that he was charged for individual collection calls to state a claim.").  In any event, a subscriber of a cellular telephone service is charged for the call.  *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 562 (F.C.C.2007) (noting that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used").

> ### C. Plaintiff Revoked Any Prior Express Consent To Place Telephone Calls To His Cellular Telephone Number Using An Automatic Telephone Dialing System Or An Artificial Or Prerecorded Voice.

> #### 1. Plaintiff Revoked Any Prior Express Consent In Writing On No Less Than Two Separate Occasions.

Defendant began calling Plaintiff's cellular telephone number during October 2010 in an attempt to collect an alleged debt owed to PACER.  (Doc. 26-1 ¶7; Doc. 26-4 at 7-11).  When PACER placed the debt with Defendant for collection, it provided Defendant with Plaintiff's name, identified as "P. Saunders," as the contact person for the debt.  (SOF ¶22).  Plaintiff sent Defendant written correspondence dated March 16, 2011, demanding Defendant cease and desist placement of all telephone calls to him.  (Doc. 26-1 ¶8; Doc. 26-1 at 14).  Plaintiff's March 16, 2011 letter was signed by "Patrick Saunders."  (Doc. 26-1 at 14).  Despite receipt of Plaintiff's written revocation of any prior express consent—and having Plaintiff's name on the account when placed by PACER—Defendant continued to place telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or an artificial or prerecorded voice.  (SOF ¶¶36-37; Doc. 26-4 at 7-11).

Per Defendant's subsequent request, Plaintiff sent Defendant written correspondence dated April 27, 2011, providing Defendant with the number Defendant had been calling from and

again demanding Defendant cease and desist all calls.   (See Doc. 16-4 at 16, 18).   Again,

Defendant continued to place telephone calls to Plaintiff's cellular telephone number using an

automatic telephone dialing system and/or an artificial or prerecorded voice.   (SOF ¶¶36-37;

Doc. 26-4 at 7-11).   Thus, on no less than two occasions, Plaintiff revoked any prior express

consent in writing.   As a result, Defendant is not entitled to summary judgment on Plaintiff's

TCPA claims.   What's more, the Court may grant summary judgment on this issue in favor of

Plaintiff *sua sponte*.   *Ramsey*, 94 F.3d at 74; *see* Fed. R. Civ. P. 56(f)(1), (3).

### 2.      Oral Revocation Of Prior Express Consent Is Sufficient.

The Western District of Texas, in *Adamcik v. Credit Control Services, Inc.*, 832

F.Supp.2d 744 (W.D. Tex. 2011), recently examined the very issue presented here: whether a

consumer may orally revoke prior express consent under the TCPA.   In *Adamcik*, the Court

discussed at length and rejected the various arguments now presented by Defendant in this

matter.   The opinion is well worth reading in its entirety for a complete analysis of the issues.

The court first considered the potential crossover between an FDCPA claim and a TCPA claim:

> What makes this question difficult is that it arises at the intersection of two
> distinct statutory schemes: the FDCPA and the TCPA. Standing alone, each
> statute is relatively easy to interpret. Relevant here, the FDCPA provides, upon a
> written request from a debtor, a creditor or debt collector is required to cease
> communicating with the debtor. 15 U.S.C. § 1692c(c). Conversely, **the TCPA is
> silent on how consent to receive autodialer calls can be revoked, but that
> simply means, for a host of reasons under the common law and canons of
> statutory construction, that an oral revocation should be effective.** See, e.g.,
> RESTATEMENT (SECOND) OF TORTS § 892A cmt. i. (1979) ("The consent is
> terminated when the actor knows or has reason to know that the other is no longer
> willing for him to continue the particular conduct. This unwillingness may be
> manifested to the actor by any words or conduct inconsistent with continued
> consent...."); RESTATEMENT (SECOND) OF CONTRACTS § 42 cmt. d (1981)
> ("Any clear manifestation of unwillingness to enter into the proposed bargain is
> sufficient [to achieve revocation]."). The difficulty is whether, when a debtor
> brings a TCPA claim, the FDCPA's writing requirement should be read into the
> TCPA. As discussed below, other district courts have divided on this question. An
> examination of both (1) the relative scope and operation of the statutes, and (2)

17

the prior case law and FCC orders, persuades the Court that **the FDCPA's writing requirement does not apply to a TCPA claim**.

*Adamcik*, 832 F. Supp. 2d at 749 (emphasis added).

The court noted that "[a]n FDCPA request to cease communications differs in scope and operation from a TCPA revocation of consent." *Id.* The court examined an unpublished opinion of the Western District of New York, *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010), upon which Defendant relies here, and stated:

> In deciding *Starkey,* the magistrate judge of the Western District of New York declared "This is a debt collection case, not a telemarketing case." *Id.* at *4. By doing so, the court effectively held compliance with the FDCPA excuses a debt collector from compliance with the TCPA. This result is contrary to both the language of the statutes in question, and by the FCC's guidance in various orders and rulings. A further reason the Court declines to follow *Starkey* is the *Starkey* court also appears to have conflated the autodialer and telephone solicitation causes of action. This is problematic because, while the FCC has made clear debt-collection calls are generally not telephone solicitations under subsection (c) of the TCPA, the FCC has equally made clear the autodialer prohibitions found in subsection (b) *do* apply to debt collectors.

*Adamcik*, 832 F. Supp. 2d at 751 (emphasis in original).

The *Adamcik* court summarized its analysis as follows, holding that oral revocation of prior express consent is permitted by the law:

> In conclusion, the *Starkey* court's explanation that "to cease debt collection calls, written notice is required," *Starkey,* 2010 WL 2541756, at *6, while an accurate statement of law under the FDCPA, ultimately misses the mark. As explained above, revocation of consent under § 227(b) does not operate to stop all debt collection calls, it operates to stop only autodialer calls to a cellular phone. Significantly, none of the four cases requiring a written revocation under § 227(b) considered this distinction. Rather, beginning with *Starkey,* they seem to have equated the narrow revocation of consent under the TCPA with the broader cease communications request under the FDCPA. This undermines their persuasiveness on the particular point of law at issue here. Therefore, in light of (1) the FCC's guidance, and (2) the Court's duty to apply both statutory schemes, and (3) the plain meaning of the statutes, the Court holds **oral revocation of consent is legally effective under the TCPA, even in the debt-collection context.**

*Id.* at 753.

18

In this case, Plaintiff orally revoked any consent Defendant may have had to call Plaintiff's cellular telephone during a phone conversation on May 23, 2011. (Doc. 26-1 ¶16). At that time, Defendant located Plaintiff's account. (Doc. 26-1 ¶17; Doc. 26-4 at 9). During the May 23, 2012 telephone conversation, Plaintiff advised Defendant of his written cease and desist letters and told Defendant that he wanted the calls to stop. (SOF ¶¶25-26 ("I remember saying, I want these calls to stop, there are too many, what can I do to stop.")). Nonetheless, despite its receipt of each of Plaintiff's previous written cease and desist letters, Defendant stated that it would not stop the calls without receiving written correspondence. (SOF ¶27). Thereafter, Defendant placed no less than seventeen (17) additional telephone calls to Plaintiff's cellular telephone. (SOF ¶37).

Even if Defendant would not be expected to locate Plaintiff's account upon receipt of his written cease and desist letters, Defendant admits that it located the account during the May 23, 2011 telephone conversation. Doc. 26-1 ¶17; Doc. 26-4 at 9). At that time, Plaintiff orally revoked any prior express consent Defendant may have had. (SOF ¶¶25-26). In addition, Plaintiff directed Defendant's attention to the fact that Plaintiff had sent Defendant written cease and desist requests, which it is undisputed that Defendant received. (Doc. 26-1¶¶8, 10) By continuing to place calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice, Defendant violated the TCPA and is not entitled to summary judgment. Indeed, the Court may grant summary judgment on this issue in favor of Plaintiff *sua sponte*. *Ramsey*, 94 F.3d at 74; *see* Fed. R. Civ. P. 56(f)(1), (3).

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment.

Respectfully submitted this 9th day of November, 2012.

/s/ Jeanne Lahiff
Jeanne Lahiff, Esq
NY Bar No. 2252435
**Weisberg & Meyers, LLC**
80 Broad Street, 5th Floor
New York, NY 10004
(888) 595-9111 ext. 511
(866) 565-1327 (fax)
JLahiff@attorneysforconsumers.com

**Please send correspondence to the address below:**

**Weisberg & Meyers, LLC**
Attorneys for Plaintiff
5025 N. Central Ave. #602
Phoenix, AZ 85012

## CERTIFICATE OF SERVICE

I certify that on November 9, 2012, I electronically filed the foregoing document with the clerk of the U.S. District Court, for the Eastern District of New York, using the electronic case filing system of the court. Notification was sent to counsel of record below via the electronic case filing system of the court on this 9th day of November, 2012.

Aaron Easley
Sessions, Fishman, Nathan & Israel, L.L.C.
200 Route 31
Suite 203
Flemington NJ 08822 5736

/s/ Jeanne Lahiff
Jeanne Lahiff, Esq