UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PATRICK SAUNDERS,<br>Plaintiff,<br><br>v.<br><br>NCO FINANCIAL SYSTEMS, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:1:12-cv-01750-BMC |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the defendant, NCO Financial Systems, Inc. ("NCO"), through counsel and pursuant to FED. R. CIV. P. 56, hereby submits the following reply brief in support of defendant's Motion for Summary Judgment.

**I. Introduction**

Plaintiff alleges that NCO violated the Telephone Consumer Protection Act (TCPA) by placing calls to his cellular phone and without his prior express consent, and the Fair Debt Collection Practices Act (FDCPA) in 3 ways when making those same calls. First, plaintiff alleges that NCO failed to send him the initial validation notice required by 15 U.S.C. § 1692g(a). Second, plaintiff alleges that NCO placed calls to his cellular phone despite knowing the calls were inconvenient in violation of 15 U.S.C. § 1692c(a)(1). Third, plaintiff alleges that NCO utilized false representations or deceptive means to collect an alleged debt in violation of 15 U.S.C. § 1692e(10).

Plaintiff has distorted both the evidence and NCO's records in a misguided attempt to stave off the entry of summary judgment in NCO's favor. This Court should reject the blatant manipulations offered by plaintiff in his opposition brief. This is a simple case requiring a review only of the evidence to evaluate the merits of plaintiff's claims, without reference to the hyperbolic and unfounded arguments of plaintiff. Such a review makes clear that there are 5

uncontroverted and material facts:

First, plaintiff provided his number to PACER as his contact number, and therefore gave consent for NCO to call his cellular telephone. Second, plaintiff did not revoke consent at any time. Third, plaintiff provided his address to the original creditor in 2009, even though plaintiff has not lived at that address since 1998. The address supplied by plaintiff was his mother's address, and was a place that he has, and continues to receive mail. Fourth, the initial validation letter was timely sent to the address supplied by plaintiff. Fifth, at no time did plaintiff advise NCO that the calls were inconvenient or harassing.

## II. There Are No Disputed Material Facts Precluding Summary Judgment

The bulk of plaintiff's opposition brief attempts to avoid summary judgment because of claimed factual disputes related to the ability of NCO to identify plaintiff's account because his letters were signed "Patrick Saunders".[1] However, the only evidence necessary to resolve plaintiff's claims at this stage has already been presented to this Court. Based on the submitted evidence, the Court can readily dispose of plaintiff's claims because there is no genuine issue of material fact. In shortest summary, the material facts are as follows:

- Plaintiff opened an account with PACER in 2009.
- At the time he created the account, the name plaintiff chose to place on the account was PLS, not Patrick Saunders
- The contact person for the account supplied by plaintiff was "P. Saunders."
- The address provided by plaintiff for PLS was an address in Glenn Dale, Maryland.
- Plaintiff did not live in Maryland at the time; he lived in New York.
- Plaintiff last lived in Maryland in 1998, 11 years prior to the time he supplied the address to PACER.

[1] *See Dkt. 27, pp. 9-11*

- When the account went unpaid, PACER placed the delinquent PLS account for collection with NCO, and included the address and telephone number previously supplied by plaintiff to PACER.

- NCO sent a validation letter to PLS at the address supplied by PLS and began calling PLS at the number supplied by PLS.

- Meanwhile, an individual named Patrick Saunders, who was not associated with the PLS account in any way (not the same name and having a different address), sent a letter to NCO asking for validation of a debt. Because no account number was supplied, NCO was unable to identify the debt to be validated.

- In response, NCO wrote to plaintiff and asked him to supply the information needed to identify the account, including the telephone number that was being called by NCO. Plaintiff refused to provide this information.

- As a result, NCO was unable to identify the account of a Patrick Saunders in New York City because NCO had no such account. And because NCO could not identify the account, which was solely the result of plaintiff's refusal to supply the requested information, NCO continued to call PLS on PLS's number.

Plaintiff thereafter filed this lawsuit claiming that NCO violated the FDCPA and TCPA because NCO failed to hit the moving target created by plaintiff. In a nutshell, plaintiff alleges that NCO violated the law because it sent a letter to an address where he requested the mail to be sent, and because NCO failed to stop calling his number, despite the fact that he refused to provide NCO with the number that was being called. This Court should reject plaintiff's gamesmanship and enter summary judgment in favor of NCO.

### A. <u>There Is No Dispute That NCO Had Consent to Place Calls to Plaintiff's Phone</u>

It is undisputed that plaintiff gave his cellular telephone number to PACER as the contact number for PLS.[2] By giving the number to PACER, plaintiff consented to the calls from NCO. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559. In his opposition, plaintiff tries to create a dispute, and resurrect this

[2] PLS was identified as the firm name on the PACER account. PLS are also plaintiff's initials. *Plaintiff's deposition, p. 90.* Patrick Saunders was not identified anywhere on the PACER account documents. The only individual identified as the "contact" for the account was "P. Saunders". *Id.*, p. 93.

moribund claim, by claiming that he revoked consent in writing and orally. Plaintiff is wrong.

1. Plaintiff Did Not Effectively Revoke Consent in Writing.

Plaintiff did not effectively revoke consent. Plaintiff incorrectly asserts the letters sent to NCO provided the necessary information to revoke consent.[3] However, despite NCO's requests for the information necessary to identify the account, which was required before further calls could be stopped, plaintiff admits his letters never told NCO ) the address on the account, 2) the phone number being called, 3) the name listed on the account 4) or any additional information requested by NCO to locate the account. Despite not providing this basic information, plaintiff argues that NCO should have known that it could no longer call some unidentified telephone number regarding an account of a person that was not located in NCO's system. To be clear, NCO did not have any account for a Patrick Saunders in New York, and without knowing the number being called, could not stop further calls to that number.

In the absence of evidence, plaintiff argues that NCO should have been able to identify his account because his letter was signed "Patrick Saunders."[4] Plaintiff's argument is mistaken because it was his conduct that prevented the idnetiifcaiton of the account. It was plaintiff alone who supplied the telephone number, a Maryland address, the name "PLS" as the subscriber, and "P. Saunders" as a contact person when opening the account.[5] This was the information provided to NCO by PACER, and the reason why NCO could not locate an account when it received a letter from "Patrick Saunders" residing in Brooklyn, NY.

NCO did all that it could to identify the account, and honor plaintiff's request by

[3] Plaintiff simply assumes that consent can be revoked, but this conclusion is not so obvious. *See Gager v. Dell Financial Services, LLC*, 2012 WL 1942079 (W.D. Pa. May 29, 2012) (concluding that the TCPA itself contains no provision allowing for revocation of consent). The Court need not reach this issue in this case though, because, even assuming that consent could be withdrawn, there is no genuine dispute that plaintiff failed to do so.

[4] Doc. 27 at 16

[5] Stevens Aff., ¶ *6*

repeatedly requesting the necessary details. Instead of providing the requisite information, plaintiff instead sent a letter stating, "My name and address should be sufficient enough information for you to do a reasonable search for responding to my validation request on April 11th." Plaintiff's refusal to provide his telephone number, and intransigence in assisting NCO in their efforts to identify the account belies any assertion that the vague letter revoked the consent NCO had to call PLS.

2. Plaintiff Did Not Effectively Revoke Consent Orally.

Alternatively, plaintiff argues that he orally revoked consent to call his cellular number during his one conversation with NCO. In making this argument, plaintiff asks this Court to reject several cases from New York, and to follow the specious reasoning of *Adamcik v. Credit Control Services, Inc.,* 832 F.Supp.2d 744 (W.D. Tex. 2011) by concluding that consent under the TCPA can be revoked orally.

Contrary to plaintiff's position, several courts in New York have previously held that any attempted revocation of consent under the TCPA must be made in writing. *See Starkey v. Firstsource Advantage*, *LLC*, 2010 WL 2541756 (W.D.N.Y. 2010); *Moore v. Firstsource Advantage, LLC,* 2011 WL 4345703 (W.D.N.Y. 2011); *Moltz v. Firstsource Advantage, LLC,* 2011 WL 3360010 (W.D.N.Y 2011). To revoke his consent, plaintiff needed to send a written request to NCO that was sufficiently detailed to allow NCO to identify the account being called. At a minimum, the revocation must include the telephone number that the consumer wishes to have no longer called. There is no dispute that plaintiff failed to do so here.

Even if this Court were to conclude that a consumer can revoke consent under the TCPA orally, there is no factual dispute that plaintiff failed to do so when he spoke with NCO. The sole conversation took placed on, May 23, 2011. According to plaintiff, during this

conversation, he simply advised the NCO representative that he would be sending over "something" via fax, intimating that he was requesting validation of the debt.[6] Critically, no fax, either requesting calls to stop, or seeking validation was ever received by NCO.[7]

**B. <u>NCO Sent Plaintiff Notice of His Validation Rights Under § 1692g</u>**

In its motion, NCO demonstrated that the initial validation notice was sent to plaintiff on October 11, 2010. Plaintiff does not cite to any evidence to prove that NCO did not *send* the letter. Instead, he argues that he did not *receive* the letter by claiming that it was not sent to a "valid and proper" address. Plaintiff argues that the address was not "proper" because he had not lived at the Maryland address since 1998. Plaintiff's complaint rings hollow for 3 reasons.

First, the address where the letter was sent is plaintiff's mother's address. Plaintiff testified that he lived at this address until he was 17 years old.[8] Second, plaintiff himself provided the Maryland address to PACER when opening the account in 2009, even though plaintiff had not lived at the address for 11 years at the time the account was opened.[9] Third, plaintiff has, and continues to receive mail at the Maryland address including his bills[10]. Though he may not have lived at the address, it is certainly reasonable to expect that plaintiff would receive mail at the address.

The nearly identical situation occurred in *Rogozinski v. NCO Financial Systems, Inc*. In *Rogozinski*, plaintiff alleged that he did not receive the initial validation notice as required by the FDCPA. The evidence there showed that NCO mailed the validation notice to plaintiff's mother's address, an address at which plaintiff previously lived. Plaintiff also continued to receive mail at the address. The *Rogozinski* court first noted that NCO had no obligation to

---

[6] Saunders Dep. Pg. 120-121, lns 19-3.
[7] *Stevens Aff. at ¶ 17.*
[8] See *Plaintiff Patrick Saunders' Deposition, pg. 9-11.*
[9] *Id. , pg. 94-95.*
[10] *Id. , pg. 128:15-25.* (Exhibit B)

prove actual receipt of the validation notice; instead, the FDCPA requires only that the notice be *sent*. The court then rejected plaintiff's claim, and entered summary judgment for NCO, concluding that there was sufficient evidence that NCO had "reason to believe the letter was sent to an address where it would reach Plaintiff," and that NCO thereby satisfied its obligation under § 1692g. *See Id*., 2012 WL 5287896, *4 (E.D. Pa. 2012).

The same result is required here, as NCO had ample reason to believe the letter would be received by plaintiff. The letter was sent to the address supplied by plaintiff, and was not returned by the Postal Service as undeliverable.[11] Moreover, plaintiff has admitted that he continues to receive mail at this address, including credit card bills and cellular phone bills[12]. Plaintiff cannot now be heard to complain that a letter was sent to an allegedly stale address when he himself was responsible for using that address.

The cases relied on by plaintiff do nothing to change this result. *Johnson v. Prof'l Collection Consultants*, 2010 WL 2196571 (S.D. Cal. 2010) stands for the unremarkable proposition that the FDCPA is violated when an initial notice letter is sent to the incorrect address. In *Johnson*, the Court determined that the defendant sent a letter to an address where the plaintiff had never lived, and that there was no evidence that plaintiff had any connection with the address. Here, plaintiff has admitted that he lived at the Maryland address, that he provided the Maryland address to the creditor, and that he continues to receive mail there.[13]

Plaintiff's reliance on *Ponce v. BCA Fin. Services, Inc.,* 2012 WL 470213 (11th Cir. 2012) is also misplaced. In *Ponce*, the court decided only whether a letter or phone call constituted the initial communication with the plaintiff, and not whether the validation letter was sent to an address reasonably likely to reach the consumer.

---

[11] Stevens Aff., ¶ *7.*
[12] *Saunders Dep. , pg. 128:15-25*. (Exhibit B)
[13] Id., pg. 128 lns. 20-25.

Finally, *Lee v. Credit Mgmt., LP*, 846 F.Supp.2d (S.D. Tex. 2012) is not applicable here. In *Lee*, the issue was whether or not the validation notice was sent. Here, the issue is whether the validation notice was sent to a valid address. There is no reasonable dispute that the notice was sent. In fact, plaintiff has done nothing to offer any evidence calling into question NCO's claim that the validation notice was sent. Plaintiff's claim instead, is that the notice was sent to the wrong address and that he therefore did not receive it.

In *Kimmel v. Cavalry Portfolio Services, LLC*, 2011 WL 3204841 (E.D. Pa. 2011), the court specifically noted that a debt collector does not need to prove the actual receipt of the validation notice; rather, proof of receipt "may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." *Id.,* (citing *Robertson v. J.C. Penney Co., Inc*., 484 F.Supp.2d 561, 565 (S.D.Miss.2007) and *Marsh v. First USA Bank, N.A*., 103 F.Supp.2d 909, 918 (N.D.Tex.2000)). The *Kimmel* court further noted that a presumption of sending can be made when an affiant with personal knowledge of the procedures in place at the time of mailing presents evidence that the notice was sent consistent with those regular business procedures. *Id.*

Here, Greg Stevens had the requisite personal knowledge of NCO's policies for the sending of the validation letter via U.S. Mail to plaintiff. *See Stevens affidavit, ¶ 7.* Greg Stevens also affirmed that the letter sent to PLS was the initial validation notice and it was sent to a valid address. *See Stevens affidavit, ¶ 7.* Finally, a copy of the letter has been produced. *See Exhibit A, copy of the validation letter sent to Plaintiff.*

The plain language of section 1692g(a) does not require that a validation notice be received by a debtor. Instead, the statute requires that a notice need only be sent to a debtor. *See Mahon v. Credit Bur. of Placer Cty., Inc*., 171 F.3d 1197, 1201(9th Cir. 1999). NCO has

established, through the deposition and affidavit of Greg Stevens that the validation notice was sent to plaintiff. This is sufficient to create a presumption that the proper notice was sent to the plaintiff. Plaintiff offers no evidence to dispute this fact. Accordingly, plaintiff's claims must fail. *See Rogozinski*, 2012 WL 5287896, * 5.

**C. Plaintiff's claim that NCO violated § 1692c(a)(1) is without merit**

Plaintiff's claim under § 1692c(a)(1) also fails because NCO did not know that further calls to plaintiff were inconvenient. Section 1692c(a)(1) prohibits a debt collector from communicating with a consumer "at any unusual time or place or time or place known or which should be known to be inconvenient to the consumer." (emphasis added). Here, there is no dispute that NCO did not know, and could not have known, that plaintiff wanted the calls to stop.

Like the TCPA claim above, plaintiff's entire claim under § 1692c(a)(1) is predicated on the false assumption that PLS's account could properly be identified because the letter to NCO from plaintiff was signed "Patrick Saunders." (Doc. 27 at 16). The assumption is insufficient to support plaintiff's claim for 4 reasons.

First, the account was not opened under the name "Patrick Saunders." The debtor was "PLS", and the contact person was "P. Saunders." Such meaningful differences prevented NCO from linking the PLS account being worked in its system with plaintiff because there was no identifiable matches (*e.g.*, name or address) between plaintiff and the PLS account. Second, plaintiff, while living in New York, provided a Maryland address when opening the account. A validation letter subsequently received by NCO from an individual in New York, without inclusion of any identifying information, could not reasonably lead to identification of the account. Third, plaintiff chose to create the account under the firm name "PLS", but then sent the validation request under the name Patrick Saunders. Any confusion in linking the PACER

account to plaintiff was the result of plaintiff's use of an alias on the PACER application. Fourth, plaintiff supplied his telephone number as the contact number for PLS, but refused to provide this number despite NCO's requests. NCO cannot be faulted for failing to stop calling a number when plaintiff refused to tell NCO the number that should no longer be called.

All of these factors make clear that NCO did not know, and could not have known, that Patrick Saunders was advising NCO that calls made to an unrelated account owed by PLS to an unknown number were inconvenient. Plaintiff's claim under §§ 1692c(a)(1) must fail.

**D. <u>Plaintiff's derivative claim that NCO violated § 1692e(10) fails</u>**

Plaintiff's final claim is that NCO violated § 1692e(10) by engaging in a "false, deceptive, or misleading representation or means in connection with the collection of any debt." This claims arises solely out of, and is derivative of the other FDCPA claims discussed above. Specifically, plaintiff claims that NCO violated § 1692e(10) by violating § 1692g and § 1692c(a)(1).

NCO did not violate the FDCPA in any way. The initial validation notice was sent to plaintiff. NCO did not know, and could not know, that it should stop additional calls on the PLS account, or that further calls were inconvenient. The § 1692e(10) claim arising from and based solely on other alleged FDCPA violations fails because these predicate claims fail. *See Hooks v. Forman Holt Eliades & Ravin, LLC*, 2012 WL 3322637, * 5 (S.D. N.Y. 2012) (a claim under § 1692e(10) fails when the predicate claim fails).

**III. <u>Conclusion</u>**

WHEREFORE, NCO Financial Systems, Inc. respectfully requests this Honorable Court enter an Order granting summary judgment in its favor and against plaintiff, for the attorney fees and costs incurred in preparing this motion and for all other just and equitable relief.

Respectfully submitted,

Dated: November 20, 2012.

/s/ Aaron R. Easley

Aaron R. Easley, Esq. (ae9922)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
200 Route 31 North, Suite 203
Flemington, NJ 08822
Phone: (908) 751-5940
Fax: (908) 751-5944
aeasley@sessions-law.biz
Attorney for Defendant
NCO Financial Systems, Inc.

**CERTIFICATE OF SERVICE**

I certify that on this 20th day of November, 2012, a copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiff's counsel as described below. Parties may access this filing through the Court's system.

Jeanne Lahiff, Esq.
Weisberg & Meyers, LLC
State of New York
1200 Smith St., 16th Fl.
Houston, TX 77002
(888) 595-9111 x412
Fax: (866) 565-1327
Email:ecf@attorneysforconsumers.com

By: /s/ Aaron R. Easley
Aaron R. Easley, Esq.
Attorney for Defendant
NCO Financial Systems, Inc.