UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                     :

PATRICK SAUNDERS,                     :      **MEMORANDUM**

                                      :      **DECISION AND ORDER**

                     Plaintiff,         :

                                        :      12-cv-1750 (BMC)

               - against -                 :

                                        :

NCO FINANCIAL SYSTEMS, INC.,      :

                                        :

                     Defendant.      :
-------------------------------------------------------- X

**COGAN**, District Judge.

        The legislative history of both the Fair Debt Collections Practices Act ("FDCPA"), 15
U.S.C. § 1692 *et seq.* and the Telephone Communications Practice Act ("TCPA"), 47 U.S.C. §
227 *et seq.* discloses a well-based concern by Congress to reduce abusive practices that
collection companies had employed against debtors and consumers.  Like any statutes, however,
remedial laws can themselves be abused and perverted into money-making vehicles for
individuals and lawyers.  This may be one of those cases.  The evidence in the record before me
suggests that plaintiff may have engaged in a game of cat and mouse with first his creditor and
then its collection company, obscuring his identity so that there was no way the collection
company could know with whom it was dealing, all for the purpose of creating this lawsuit.  I am
granting defendant's motion for summary judgment, and I am requiring plaintiff and his attorney
to show cause why monetary sanctions should not be imposed under Rule 11 of the Federal
Rules of Civil Procedure.

## BACKGROUND

The following facts are not in dispute.  On or about August 27, 2009, plaintiff opened an account with Public Access to Court Electronic Records ("PACER"), which is an electronic public access service that allows users to obtain case and docket information from federal courts via the Internet.  In opening the account, plaintiff did not use his own name.  Instead, he listed the account holder as "PLS" (apparently those are his initials).  In addition, although PACER requires an address to open an account, plaintiff did not give his correct address in Brooklyn.  Instead, he provided his mother's address in Glenn Dale, Maryland even though he had not lived there for almost 15 years.  Finally, as PACER requires a contact telephone number, plaintiff listed his cell phone number as the only number on the application.

PACER charges on a per-page retrieval basis, and plaintiff incurred charges of $36.35.  He quickly defaulted on this debt, and PACER turned plaintiff's account over to defendant NCO Financial Systems, Inc. for collection on October 6, 2010.  Five days later, on October 11, 2010, NCO sent a "validation notice," that is, a notice pursuant to 15 U.S.C. § 1692g, that the debt had been assigned to it for collection, and advising the account debtor of his rights, to the only address plaintiff had given it – the Maryland address.[1]  Plaintiff never received that letter.  Three days after sending the letter, NCO began calling the number on file in an effort to reach the responsible party, "PLS."  At least some of the calls were automated, recorded voice calls.

Plaintiff wrote to NCO on March 16, 2011.  In this letter, he recited that he had received two automated calls on that day, and that he was writing "pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692(g)," to advise NCO "that your claim is disputed and validation is

---

[1] Plaintiff asserts that it is a disputed issue of fact as to whether NCO sent the letter.  There can be no genuine dispute.  NCO has produced a copy of the letter, business records showing it was mailed, and testimony confirming the regularity of the business practice.  Plaintiff has offered nothing in opposition other than his denial of receipt.  That is not enough to raise an issue of fact.  See Meckel v. Continental Resources Co., 758 F.2d 811 (2d Cir. 1985).

2

requested." Plaintiff requested that NCO stop contacting him by phone "about the above-referenced debt" and insisted that all future communications with plaintiff must be done in writing and sent to the address noted in the letter. The letter further requested identification of the creditor, the amount of the debt, and the original account number.

Significantly, the letter did not disclose or mention in any way that plaintiff was writing with reference to an account in the name of "PLS," nor did it disclose that the address of the account debtor was in Maryland. In addition, the letter did not contain the telephone number that NCO had been calling. NCO checked its records for an account under plaintiff's name or at the address on his letter – his home address in Brooklyn – and could not locate the account. NCO therefore wrote back to plaintiff on April 22, 2011, advising plaintiff that it could not find an account in his name, and asking him to supply further information such as his social security number and the telephone number at which it was allegedly calling plaintiff.

Plaintiff responded by letter dated April 27, 2011. He identified the dates and times at which he had received automated calls since sending his initial letter and the NCO number which the automated caller asked him to call in order to reach "Anthony Davis with NCO." Plaintiff again demanded cessation. Once again, however, he did not disclose the name of the account, the address of the account, or the telephone number to which the calls were being made. In fact, plaintiff expressly declined to provide any additional information, saying he did not feel "comfortable," and that he was "reserve[ing] the right to seek any remedies allowed by law to resolve this matter."

On May 10, 2011, NCO wrote back, again advising plaintiff that it still could not identify a debtor named Patrick Saunders with an address in Brooklyn, and again asking for information

3

as to the identity of the original creditor or the account number, and, again, the telephone number at which plaintiff was being called.

Plaintiff failed to respond to this letter. Instead, he filed a complaint with the New York City Department of Consumer Affairs ("NYCDCA"). NYCDCA contacted NCO, but with the same absence of accurate identifying information, NCO still could not locate the account, and it so advised NYCDCA.

Finally, on May 23, 2011, plaintiff called NCO and gave a customer service representative the actual address and telephone number on the account. The representative thereupon located the account. Plaintiff advised that he would be sending a fax to confirm his request that NCO cease and desist collection efforts, but he never sent the fax. Instead, he brought this lawsuit.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that "affect the outcome of the suit under the governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (citation omitted). In determining whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

4

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." Anderson, 477 U.S. at 248. Rather, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." Id. at 252.

## II. The TCPA Claim

The TCPA prohibits any person from calling a cell phone number "using any automatic dialing system or an artificial or prerecorded voice" unless that person has "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Here, plaintiff concedes that by listing only his cell phone number with PACER, he gave both PACER and NCO, its collection agent, "prior express consent." This is a concession that plaintiff must make, as the authorities are almost unanimous in holding that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent. See Soppet v. Enhanced Recovery Co. LLC, 679 F.3d 637 (7th Cir. 2012); Meyer v. Portfolio Recovery Associates, LLC, 696 F.3d 943 (9th Cir. 2012); Moore v. Firstsource Advantage, LLC, No. 07-CV-770, 2011 WL 4345703 (Sept. 15, 2011 W.D.N.Y.); Starkey v. Firstsource Advantage, LLC, No. 07-CV-662A(Sr), 2010 WL 2541756 (Mar. 11, 2010 W.D.N.Y.); FCC 07-232 Declaratory Ruling (Dec. 28, 2007).

Instead, plaintiff contends that his letters to NCO of March 16, 2011 and April 27, 2011 constituted revocations of his prior consent because he therein told NCO to stop calling him. This argument fails both factually and legally.

Factually, the theory fails because neither letter gave NCO sufficient information to identify the account. All plaintiff had to write was that NCO should look for an account named "PLS" or at least give the address or cell phone number that he had given PACER when registering for his account. For whatever reason, he chose not to. The fact that Patrick Saunders of Brooklyn wished to revoke prior consent was meaningless; it may as well have been John Smith of Tacoma making the request. No amount of effort on NCO's part would have disclosed that Patrick Saunders of Brooklyn was actually PLS of Maryland.

Plaintiff's only response to this is to note that in his PACER application, plaintiff listed the "contact person" at PLS as "P. Saunders." However, the record before me is undisputed that the "contact person" information does not appear in a searchable field that NCO can access. One has to first know who the account debtor is before one can find any particular contact at that account debtor. NCO can search by the name of the account debtor, his address, or his telephone number, but not by the particular contact person at the account debtor.

Plaintiff's entire case is premised on the assumption that NCO could or should have found his name based on the contact person listing of "P. Saunders." But I see no reason why NCO must alter its search system to do more than it did. First, plaintiff had complete knowledge of the account information and could easily have identified it if he had wanted to. Second, the fact that the management of an account debtor may list an employee or subordinate as the "contact person" for the account does not mean that the name of the subordinate is crucial identifying information that a collection agency must match with a debtor who, for undisclosed

6

reasons, declines to identify the account with which he is connected. Whether this is a deliberate problem that plaintiff created or one that he simply neglected to fix, the problem was entirely of his own making, not that of NCO.

Plaintiff's argument is particularly misplaced here because he did not list "Patrick Saunders" as the contact person, so that even if NCO had the capacity to search that field, it would not have found him. "P. Saunders" could be Patrick Saunders, but it could also be Peter Saunders, Phil, Phillip, or Phillipe Saunders, Paul Saunders, Pam or Pamela Saunders, and a host of other male and female names that start with "P." Moreover, "Saunders" is not a name like "Zhiritofosky." There could easily be more than one account debtor with a contact person of "P. Saunders." And even if NCO had been able to search the contact person field and see a "P. Saunders," it would have no reason to match that account debtor with plaintiff, because the account debtor, PLS, was in Maryland, and plaintiff's letters showed his address to be in Brooklyn.

In addition, plaintiff's claim fails legally because, like the Court in Gager v. Dell Financial Services, LLC, No. 3:11-CV-2115, 2012 WL 1942079 (W.D. Pa. May 29, 2012), I see nothing in the TCPA that gives a consumer two bites at the apple. That is, there is no provision in the TCPA, unlike the FDCPA, see 15 U.S.C. § 1692c(c), that allows withdrawal of a voluntarily-given, prior express consent to call a cell phone number. Nothing compels a consumer to list his cell phone number with his counterparty when he opens an account, or to open an account at all, but if that is the number he chooses to provide, then he cannot complain about being called at that number.

It is not as if we are dealing with a fundamental constitutional right where a waiver may, under limited circumstances, be withdrawn. See e.g., Davis v. United States, 512 U.S. 452, 114

7

S. Ct. 2350 (1994). This is a narrow statutory right not to receive automated calls on a cellphone. A consumer that voluntarily gives it up need not have an opportunity to change his mind later; he has withdrawn from the protection of the statute. He is no worse off than all other consumers were before passage of the statute, because he has opted out of the statute. Nor is there anything unduly harsh about this conclusion; the consumer, if he is a debtor, remains protected from harassment by the FDCPA.

I recognize that unlike the Court in Gager, other district courts have ruled otherwise, some holding that consent can be withdrawn as long as the request to withdraw is in writing, see e.g., Moore v. Firstsource Advantage, LLC, No. 07-CV-770, 2011 WL 4345703 (Sept. 15, 2011 W.D.N.Y.); Starkey v. Firstsource Advantage, LLC, No. 07-CV-662A, 2010 WL 2541756 (Mar. 11, 2010 W.D.N.Y.), and others holding that an oral direction to withdraw is sufficient. See e.g., Adamcik v. Credit Control Services, Inc., 832 F. Supp. 2d 744 (W.D. Tex. 2011). I respectfully disagree with both lines of cases. The reason there is a split among these authorities is because the statute provides for neither result, so those courts that wish to permit withdrawal of consent are forced to apply their own policy preferences. If Congress wishes to change the statute, it can – it has shown in the FDCPA that it knows how to provide for withdrawal of consent when it wants to – but I do not think it is for the courts to read a substantive right into a statute when it is quite conspicuously missing.

I therefore conclude that summary judgment must be granted to NCO on plaintiff's TCPA claim.

**III. FDCPA Claims**

Plaintiff's FDCPA claims are predicated on the same erroneous assumption as his TCPA claim – that, notwithstanding his refusal to disclose sufficient particulars to permit identification

8

of the account, NCO had a duty to send a validation notice to his Brooklyn address, and to stop calling him based on the letters he wrote using his own name instead of the account name, and from his Brooklyn address instead of the Maryland address. Because I reject plaintiff's premise, each of his FDCPA claims fails as well.

First, plaintiff contends that NCO did not "properly" send a validation notice, which violated 15 U.S.C. § 1692(a), because it never sent a validation notice to his Brooklyn address. The validation notice was sent to the address that defendant had for the account, which was the address that plaintiff had provided. Nothing in plaintiff's letters of March 16, 2011 and April 22, 2011 should have alerted defendant to the fact that the address that plaintiff had listed on the account was not the address to which he wanted the validation notice sent. The notice was properly sent, and plaintiff's claim is therefore rejected.

Second, plaintiff claims that NCO violated 15 U.S.C. § 1692c(a)(1) by calling him at an "unusual time or place or a time or place known or which should have been known to be inconvenient." The claim is frivolous. Plaintiff does not even say what was unusual or inconvenient about the calls. There is no dispute that all of the calls were made during business hours or early evening, and since the calls were to the cell phone that plaintiff had designated, they were going to be received at whatever place plaintiff was physically present when his cell phone rang.

Apparently, although not expressly, plaintiff is arguing that since his letters of March 16, 2011 and April 22, 2011 and his phone call of May 23, 2011 demanded that NCO stop calling, every call that NCO made after each of those contacts, all of which he received at his home, was "inconvenient." As to the letters, I have already held that NCO had no duty to read plaintiff's mind and match his letters to an account that listed a different name and address. Moreover,

even if NCO had done so, there is nothing in the letters that complains about the calls being received at an inconvenient time or place. The letters demanded that NCO stop calling Patrick Saunders in Brooklyn. Failure to comply with a cease and desist demand – if an account debtor provided sufficient information – would violate § 1692c(c), but not every violation of that subsection is a violation of § 1692c(a)(1). Section 1692c(a)(1) focuses on the disregard of a known or obvious time or place restriction – like calling someone at midnight. See 15 U.S.C. § 1692c(a)(1) ("In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock post-meridian, local time at the consumer's location.").

The May 23, 2011 telephone call, when plaintiff finally provided enough information so that NCO could determine that "PLS" was his pseudonym, suffers from the same lack of a demanded restriction as to time or place. More importantly, there is no factual dispute that plaintiff told the NCO agent that he would confirm his request in a fax, and plaintiff never sent the fax. From the perspective of a reasonable collection company, NCO received a phone call from someone named Patrick Saunders of Brooklyn who orally contended that he was actually PLS of Maryland, and that he would send a fax confirming it. The story was sufficiently unusual, even bizarre, that NCO was perfectly reasonable in not acting on the oral advice until it received the promised written confirmation, especially since a fax would have been received in minutes. Once again, plaintiff's problem was of his own making, as he never followed through with that written confirmation.

Finally, plaintiff's claim under the FDCPA's catch-all provision, § 1692e(1), which prohibits "false or deceptive statements," is merely a combination of his other claims. NCO did nothing false or deceptive here; if there was any deception, it was what may have been plaintiff's

10

deliberate refusal to give NCO the information it needed to link him to the account. The claim is thus without merit.

## IV. Rule 11 Considerations

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies that to the best of [his] . . . knowledge, information, and belief formed after an inquiry reasonable under the circumstances," that the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b). The purpose of Rule 11 "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct. 2447, 2454 (1990). Where the possibility of sanctions is raised by the court *sua sponte,* the appropriate standard is subjective bad faith. In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003).

I have a serious concern that this lawsuit reflects an attempt by plaintiff and/or his attorney to manipulate the law for an improper purpose. The record before me clearly raises an issue as to whether plaintiff deliberately misled NCO for the purpose of creating a claim against it under the FDCPA and the TCPA that could be settled for nuisance value plus attorneys' fees. Primarily, it would have been so easy for plaintiff, in his March 16, 2011 letter, to have simply stated that he was PLS of Glenn Dale, Maryland, and have included his telephone number. He had no discernible reason not to provide NCO with his telephone number – there could be no

11

question of privacy – because he knew NCO already had that number. I have no doubt on this record that NCO would have ceased calls to him if he had just given the proper contact information. The inference of improper intent is furthered by the fact that plaintiff refused to give this information when NCO specifically asked him for it.

There is other circumstantial evidence suggesting bad faith. First, although claims under the FDCPA are evaluated under the "least sophisticated consumer" standard, see Ehrich v. I.C. System, Inc., 681 F.Supp.2d 265, 268-69 (E.D.N.Y. 2010), plaintiff is certainly not that. I don't know if plaintiff has legal training, but his letters of March 16, 2011 and April 22, 2011 strongly suggest that they were written by someone who does. Laymen generally do not write things like:

> Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692(g) that your claim is disputed and validation is requested.
>
> . . .
>
> I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.
>
> . . .
>
> [After disclosing medical information relating to plaintiff]. Information about my medical condition is strictly confidential. You are not authorized to release this information to any 3rd party without my express written prior consent.

Plaintiff's letter of April 27, 2011 has the same, professionally-crafted tone; yet, as noted above, it still declined to answer NCO's questions that would have identified that plaintiff was writing about the PLS account. Moreover, the fact that this case involves a delinquent PACER account suggests some legal background or advice on plaintiff's part. I do not have to apply the "least sophisticated consumer" standard in a Rule 11 inquiry. FDCPA and TCPA plaintiffs and their attorneys are subject to the same good faith obligation as any other plaintiffs.

Second, when asked at his deposition why he listed his mother's address with PACER as the contact address instead of his own, plaintiff gave testimony that was at least wrong and very possibly false. Plaintiff testified that he did this because the credit card that he was using had his mother's Maryland address as the billing address, and thus he had no choice but to use that address. That is not true. The PACER registration page has separate sections for "Personal Information," including the applicant's address, and "Credit Card Information," which allows a different billing address. The same is true of the designation of the account holder's name, which allows the actual user's name in the "Personal Information" field and, if appropriate, a different "Card Holder Name" in the "Credit Card Information" section. See PACER, https://www.pacer.gov/psco/cgi-bin/regform.pl (last visited Dec. 19, 2012). Plaintiff thus provided his mother's address, instead of his Brooklyn address, for some reason other than that to which he testified.

Moreover, even if plaintiff's testimony was accurate, and he was using his mother's address as his billing address, it would mean that he knew creditors would contact him at that address. Why, then, would he write to a collection agency under a different name from a different state?

Finally, the public records of this Court show that plaintiff is a repeat filer of FDCPA lawsuits, and he is represented by the same attorneys in those lawsuits. He has filed three other such lawsuits in this district this year. It is not possible to tell from the complaints in those actions the extent to which they are similar to the instant action; it is clear that at least some of the issues are different. Nevertheless, it seems an odd coincidence that plaintiff's FDCPA rights are being violated by so many collection agencies and a law firm (one of the defendants in these cases is a law firm) simultaneously.

13

Even if the instant lawsuit is not an attempt to improperly manipulate the law, I have serious doubts as to whether the arguments that plaintiff's attorneys have advanced have been made in good faith. In light of plaintiff's repeated failures to disclose that he was PLS of Maryland, I have difficulty seeing how it can be reasonably argued that NCO did anything wrong. I simply cannot see what else it should have done in the absence of further information from plaintiff, information as to which he had sole access.

Thus, there remain serious Rule 11 concerns that must be addressed in this case.

## CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed. The Clerk is directed to enter judgment in favor of defendant. By separate order, the Court will schedule a hearing in connection with the Rule 11 issue raised above.

**SO ORDERED.**

s/ BMC

_____
U.S.D.J.

Dated: Brooklyn, New York
December 19, 2012

14